UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANITA TAYLOR,

**DECISION AND
ORDER**

                    Plaintiff,

08-CV-0846
(VEB)

        V.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## I. INTRODUCTION

In January of 2006, Plaintiff Anita Taylor applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she was unable to work between December 18, 2005, and June 9, 2007, due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.  Plaintiff, through her attorneys, Lachman & Gorton, Peter A. Gorton, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties, by and through their respective counsel, consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636 (c) and Rule 73 of the Federal Rules of Civil Procedure.  (Docket No. 11).  The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for disposition. (Docket No. 15).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB on January 17, 2006, alleging disability beginning on December 18, 2005. (T at 58-62, 278-80).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 8, 2008, before ALJ Robert E. Gale.  Plaintiff appeared with her attorney and testified. (T at 287-320).  At the hearing, Plaintiff, through counsel, amended her applications to allege a closed period of disability from December 18, 2005, to June 9, 2007. (T at 291).

On May 30, 2008, ALJ Gale issued a decision denying Plaintiff's applications. (T at 13-19).  The ALJ's decision became the Commissioner's final decision on July 17, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 6-9).

Plaintiff, by and through her attorney, timely commenced this action on August 5, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff filed a supporting Brief on November 5, 2008. (Docket No. 8). The Commissioner interposed an Answer on November 10, 2008 (Docket No. 9) and filed a Brief in opposition on December 18, 2008 (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, the Commissioner's motion is denied, Plaintiff's motion

---

[1] Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

is granted, and this case is remanded for further proceedings consistent with this Decision and Order.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010.  The ALJ concluded that Plaintiff did not engage in substantial gainful activity during the alleged period of disability (December 18, 2005 through June 9, 2007).  The ALJ determined that Plaintiff had the following medically determinable impairments considered "severe" under the Social Security Act: polysubstance abuse (in remission), bipolar disorder, posttraumatic stress disorder, and knee pain (secondary to bilateral total knee replacements). (T at 15).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 17).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC")

5

to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday.  The ALJ further determined that Plaintiff could not repetitively use foot controls, crawl, or climb ladders or scaffolds; but could occasionally kneel and crouch; and could occasionally perform fine manipulation with her hands.  With regard to Plaintiff's mental capacity, the ALJ concluded that Plaintiff could understand, remember, and perform simple tasks consistently; learn simple new tasks; maintain attention and concentration; and work in a low stress environment. (T at 17).

The ALJ found that Plaintiff had the RFC to perform her past relevant work as a food preparation worker during the alleged period of disability. (T at 18-19).  Accordingly, the ALJ found that Plaintiff was not under a disability, as defined under the Social Security Act, during the time period at issue and was therefore not entitled to SSI benefits or DIB. (T at 19).  As noted above, the ALJ's decision became the Commissioner's final decision on July 17, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 6-9).

## 2.    Analysis

Plaintiff contends that the Commissioner's decision should be reversed.  She offers three (3) principal arguments in support of this position.  First, Plaintiff contends that the ALJ erred by finding that she could perform the mental demands of her past relevant work. Second, Plaintiff asserts that the ALJ's conclusion that Plaintiff could perform the physical demands of her past relevant work is not supported by substantial evidence.  Third, Plaintiff challenges the ALJ's RFC determination.  This Court will address each argument in turn.

### a.    Ability to Perform Mental Demands of Past Relevant Work

"[I]n the fourth stage of the [sequential evaluation], the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62).  A claimant is not disabled if she can perform her past relevant work, either as she actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy." Speruggia v. Astrue, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

While the claimant bears the burden of proving an inability to perform past relevant work, "the Commissioner has the duty to adequately inquire into the demands of [claimant's] past relevant work so that a correct decision can be reached as to [claimant's] ability or inability to perform it." Wood-Monroe v. Astrue, No. 05-CV-1570, 2008 WL 4283412, at *6 (N.D.N.Y. Sep't 16, 2008).

In this case, Plaintiff described her past relevant work as "food prep/deli/cash register grill one day." (T at 72).  She indicated that she was obliged to restock products, lift deli meats and other items from the freezer, and restock shelves. (T at 72).  She was not expected to supervise other employees and was not considered a "lead worker." (T at 72-73).  Plaintiff reported that her job involved the use of machines, tools, or equipment, but did not require technical knowledge or skills. (T at 80).  She was not required to perform any writing or complete reports. (T at 80).  Plaintiff indicated that her work was performed in a "cafeteria" setting. (T at 87).

At the hearing before the ALJ, Plaintiff testified that she "did some cashiering work" and "worked in the deli." (T at 297).

The ALJ concluded that Plaintiff retained the ability to perform the mental demands of her past relevant work during the alleged period of disability. (T at 18-19).  This Court finds that the ALJ's finding in this regard is not supported by substantial evidence.

"The decision as to whether the claimant retains the functional capacity to perform past work . . . has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit."  SSR 82-62; see also Kerulo v. Apfel, 98 Civ 7835, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999)("Pursuant to both case law and [SSR] 82-62, in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make *a specific and substantial inquiry* into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities.")(emphasis added").

8

Moreover, "for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." SSR 82-62

In the present case, the ALJ did not apply the requisite care to secure evidence related to the mental demands of Plaintiff's prior employment.  The ALJ's questions at the hearing with regard to Plaintiff's past relevant work were quite brief and did not explore in any meaningful manner the mental demands of Plaintiff's employment. (T at 297-98).  For example, the ALJ obtained no information about the speed, precision, or complexity of tasks associated with the job.

Most significantly, while it was established that Plaintiff did not have supervisory responsibilities at the cafeteria, the ALJ did not obtain any evidence with regard to the amount of interaction with co-workers and the public.  This omission was significant, given the ALJ's conclusion that, during the relevant time period, Plaintiff's RFC permitted "only occasional interaction with the public and coworkers." (T at 17).  The ALJ made no attempt to reconcile this aspect of his RFC determination with his conclusion concerning past relevant work.

Examination of a comparable job description in the *Dictionary of Occupational Titles* ("DOT") indicates that work similar to that performed by Plaintiff involves significant interaction with the public and co-workers. See DOT Code 311.472-010 (Fast-Foods Worker)("Requests customer order . . . [n]otifies kitchen personnel of shortages or special orders").  The ALJ did not discuss and, thus, did not distinguish this (or any other) DOT

9

description.  Moreover, even if the ALJ's failure to adequately explore the mental demands of Plaintiff's past relevant work could arguably be excused, his failure to consult other resources, such as the DOT, cannot.  See 20 C.F.R. § 1560 (b)(2)(providing that the Commissioner will "use the services of vocational experts or vocational specialists, or other resources, such as the 'Dictionary of Occupational Titles' and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity").

The ALJ also did not make any meaningful inquiry into the level of stress associated with Plaintiff's past relevant work.  This omission was also significant, given the finding of Dr. Mary Ann Moore, the consultative examiner, that Plaintiff had "a great deal of difficulty dealing with stress." (T at 146).  Dr. Moore also concluded that Plaintiff's "poor coping abilities ... could create problems dealing with stressful work situation[s] as well as with making appropriate work decisions." (T at 146).  The ALJ did not reject Dr. Moore's findings.  Rather, he simply defined a "low stress environment" as an environment "requiring only occasional decision making and only occasional interaction with the public and coworkers." (T at 17).  This is, of course, an unduly narrow definition.  Work stress can be the result of many factors, including the requirement that work tasks be performed rapidly or in a time sensitive situation, even if the worker is not necessarily interacting with co-workers or the public.

The ALJ's finding that Plaintiff could perform her past relevant work implies that the work involved very little stress.  The record does not contain substantial evidence in support of this conclusion.  Indeed, one might readily conclude that working in a cafeteria during

meal times (either as a grill cook or a cashier) involves a fair amount of stress.  Further, as discussed above, even applying the ALJ's own definition of "low stress environment," his conclusion is problematic because the record did not contain sufficient evidence with regard to the amount of interaction with co-workers and the public.

The ALJ's past relevant work assessment is also undermined by a material flaw in his RFC determination.  Dr. Moore opined that Plaintiff's impairments would "create problems with maintaining a regular work schedule." (T at 146).  The ALJ did not attempt to reconcile this finding with his RFC determination or his conclusion that Plaintiff could perform her past relevant work.

An RFC determination requires an assessment as to the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting *on a regular and continuing basis*, and the . . . assessment must include a discussion of the individual's abilities on that basis." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999)(emphasis added). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.  The ALJ's decision contains no discussion as to whether, during the alleged period of disability, Plaintiff had the ability to perform sustained work activities "on a regular and continuing basis."  Dr. Moore's finding indicates that Plaintiff did not have that capacity.  The ALJ's failure to address Dr. Moore's conclusion and/or reconcile his finding with Dr. Moore's assessment constituted reversible error.

The Commissioner attempts to salvage the ALJ's decision by pointing primarily to two pieces of evidence.  Dr. J. Kim Cusimano, Plaintiff's primary care physician, made a brief notation in connection with a November 2006 office visit that Plaintiff's "[b]ipolar

[disorder] has been stable." (T at 211).  In addition, a non-examining State Agency review doctor opined that Plaintiff had only moderate limitations with respect to maintaining social functioning and sustaining concentration, persistence, or pace. (T at 200).  The Commissioner's argument is flawed in at least three respects.

First, Dr. Cusimano did not engage in a detailed assessment of Plaintiff's mental state or offer an opinion concerning (for example) her capacity to interact with co-workers or the public, her ability to maintain a regular work schedule, or her capabilities with regard to work stress.  As such, the passing reference to Plaintiff's bipolar disorder being "stable" is of limited relevance with regard to whether Plaintiff could perform her past relevant work.

Second, as to the non-examining State Agency doctor's review opinion, it is well-settled that such an assessment, without more, cannot constitute substantial evidence.  See Griffith v. Astrue, 08-CV-6004, 2009 WL 909630 at *9 (W.D.N.Y. July 27, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); see also McClean v. Astrue, 04-CV-1425, 2009 WL 1918397, at *4 n. 2 (E.D.N.Y. June 30, 2009).

Third, as discussed above, Dr. Moore, the psychiatric consultative examiner, concluded that Plaintiff had several significant work-related limitations, including "a great deal of difficulty dealing with stress," "problems maintaining a regular work schedule," and "problems . . . relating adequately with coworkers and in public." (T at 146).  The ALJ did not reject Dr. Moore's conclusions or attempt to reconcile them with his RFC determination or his past relevant work assessment.

In sum, this Court has little difficulty concluding that the ALJ's decision with regard to Plaintiff's ability to perform the mental demands of her past relevant work is not supported

12

by substantial evidence.  See, e.g., Kerulo, 1999 WL 813350, at *9 ("Because the record contains no relevant evidence, the ALJ's finding that Kerulo's work . . . did not involve high levels of stress is not supported by substantial evidence."); Wood-Monroe, 2008 WL 4283412, at *6 (reversing decision because the "ALJ did not inquire into the demands of Plaintiff's work as a cashier, giving only cursory attention to Plaintiff's jobs at the hearing level, and failed to consult any external sources such as the Dictionary of Occupational Titles or a vocational expert in coming to the conclusion that Plaintiff could perform her broadly and erroneously defined past relevant work"); Steficek v. Barnhart, 462 F.Supp.2d 415, 421 (W.D.N.Y.2006) (remanding, inter alia, because the ALJ "made no findings as to the mental demands" of the claimant's past relevant work).

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).

For the foregoing reasons, this case is remanded to the Commissioner for further development of the record and reconsideration regarding the question of whether Plaintiff could perform the mental demands of her past relevant work during the alleged period of disability.  If it is determined on remand that Plaintiff could not perform the mental demands of her past relevant work during that period, the ALJ will need to proceed to the fifth and final step of the sequential evaluation process.

13

###### b.     Ability to Perform Physical Demands of Past Relevant Work

The ALJ's conclusion that Plaintiff retained the RFC to perform the physical demands of her past relevant work is likewise flawed and not supported by substantial evidence.  In two reports, Plaintiff indicated that she worked for 5 hours a day in the food preparer position and was obliged to stand the entire time. (T at 71-72, 79-80).  She also stated that she was required to write, type or handle small objects throughout the day. (T at 72, 80). In a subsequent work history report, Plaintiff indicated that her daily work hours "varied" and that she was required to stand for 8 hours per day. (T at 88).  As such, Plaintiff's statements, when considered together, indicated that her past relevant work required constant standing and fine motor manipulation.  A comparable DOT title is consistent with Plaintiff's statements concerning the fine motor requirements of her work. See DOT Code 311.472-010 (Fast-Foods Worker)("Requests customer order and depresses keys of multicounting machine . . .[m]akes and serves hot beverages, using automatic water heater or coffee maker . . . [p]resses lids onto beverages and places beverages on serving tray or in takeout container").

The ALJ's questioning at the hearing concerning the physical demands of Plaintiff's past relevant work was limited to the following exchange:

> Q:     And what was that cafeteria work?  Were you doing prepping and, and short order work or were you one of the people who - you know - worked the line and just dished out food or did you clean up the tables, things like that?  What was your specific job in –
>
> A:     I, I did some cashiering work.  I worked in the deli; that was another thing I did.

(T at 297).  No specific questions were asked with regard to Plaintiff's statements that her

14

past relevant work required standing and fine motor manipulation throughout the entire work day.

This failure to develop the record is significant because the ALJ found that, during the relevant time period, Plaintiff could stand for 6 hours in an 8-hour workday and could only perform fine manipulation with the hands occasionally. (T at 17). The ALJ's conclusion that Plaintiff could perform her past relevant work implies that such work only required occasional fine manipulation with the hands and allowed for Plaintiff to sit for 2 hours during the workday. There is no evidence to support either implication in the record.

A remand for further development of the record and reconsideration regarding Plaintiff's ability to perform the physical demands of her past relevant work during the relevant time period is therefore also required.

### c.    RFC Determination

As discussed above, the ALJ found that Plaintiff retained the RFC to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The ALJ further determined that Plaintiff could not repetitively use foot controls, crawl, or climb ladders or scaffold; could occasionally kneel and crouch; and could occasionally perform fine manipulation with her hands. With regard to Plaintiff's mental capacity, the ALJ concluded that Plaintiff could understand, remember, and perform simple tasks consistently; learn simple new tasks; maintain attention and concentration; and work in a low stress environment, which the ALJ defined as "an environment requiring only occasional decision making and only occasional interaction with the public and coworkers." (T at 17).

The ALJ's determination cannot be sustained. The ALJ explained that his decision

15

was based upon "the State Agency residual functional capacity assessments, the opinions of Dr. Henderson and Dr. Moore, and the evidence showing that [Plaintiff's] psychiatric impairments have been stable." (T at 18).  However, the ALJ made no attempt to reconcile his RFC finding with Dr. Moore's assessment that Plaintiff would have difficulty maintaining a regular work schedule. (T at 146).  In addition, Dr. Moore indicated that Plaintiff had "poor coping skills," which could create problems with "making appropriate work decisions." (T at 146).  The ALJ's failure to reconcile these findings with his RFC assessment was significant.  The ability to maintain a regular work schedule and respond appropriate to routine changes in the work setting are basic skills necessary for the performance of competitive, remunerative, unskilled work. See SSR 85-15 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.").  Accordingly,  the question of Plaintiff's RFC during the alleged period of disability must also be revisited on remand.

### 3.    Counsel's Apparent Failure to Develop the Record

As outlined above, the ALJ has a duty to develop the record concerning a claimant's past relevant work.  This duty applies even where, as here, the claimant is represented by counsel.  However, the ALJ's duty to develop the record does not relieve the claimant's counsel of his or her independent and concomitant professional obligation to marshal evidence in support of the benefits claim.  In this case, Plaintiff bore the burden of proving that she could not perform the mental and physical demands of her past relevant work.

16

Thus, it was incumbent upon her attorney to develop the record concerning the mental and physical demands of that past relevant work.

Nevertheless, for the reasons outlined above, this Court finds that the ALJ committed reversible error by not developing the record and by failing to adequately account for the limitations assessed by the psychiatric consultative examiner.  However, the absence of sufficient evidence concerning the mental and physical demands of Plaintiff's past relevant work is also an indictment against the performance of Plaintiff's counsel, who had the opportunity to address this issue by, for example, questioning Plaintiff about her past work at the hearing.

If the courts fail to recognize the duty of claimant's counsel to develop the record, we risk encouraging counsel to leave the record underdeveloped at the administrative level deliberately and then seek a remand (and attorneys' fees) on that basis before the District Court.

This concern was aptly summarized in <u>Webb v. Astrue</u>, 525 F. Supp.2d 1329, 1334 (N.D.Ga.2007), as follows:

> If the court awards attorney's fees under these circumstances, it will not only reward the attorney's lack of diligence but effectively would send a message that the Social Security claimant's attorney does not need to be adequately prepared to present and make relevant arguments and inquires at the administrative level because any defects in his or her presentation will be remedied by the Federal Court and paid for by the Government at the taxpayer's expense on appeal.

<u>Webb</u>, 525 F. Supp. 2d at 1334; <u>see</u> <u>also</u> <u>Martinez v. Astrue</u>, No. 08-CV-0117, 2010 WL 890953, at *3 (N.D.N.Y. Mar. 3, 2010).

Any application for attorneys' fees submitted by Plaintiff's counsel in this matter will

17

address the concern articulated above.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion is denied, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Decision and Order.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 16, 2011

Syracuse, New York

## V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is DENIED; and it is further

ORDERED, that Plaintiff's motion for judgment on the pleadings is GRANTED; and it is further;

ORDERED, that the Clerk of the Court shall enter a judgment in favor of Plaintiff

remanding this case to the Commissioner of Social Security pursuant to sentence four of

42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Decision and

Order.


Dated:   March 16, 2011

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

19